UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
DAYS INN WORLDWIDE, INC.,                             :
a Delaware Corporation,                               :
                                                      :
                    Plaintiff,                        :    **REPORT AND RECOMMENDATION**
                                                      :
                    -against-                         :    05 Civ. 10100 (KMW)(KNF)
                                                      :
AMAR HOTELS, INC., a Georgia                          :
Corporation, et al.,                                  :
                                                      :
                    Defendants.                       :
------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE KIMBA M. WOOD, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

On November 30, 2005, Days Inn Worldwide, Inc. ("DIW") commenced this action against Amar Hotels, Inc. ("Amar"), Bhupendra Thakoor ("B. Thakoor"), and Ajitkumar Mehta ("Mehta"), to recover damages, pursuant to the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and 1125(c), and the parties' license agreement. Thereafter, Neelum Thakoor ("N. Thakoor") was substituted for B. Thakoor, in her capacity as the executrix of the estate of B. Thakoor. On February 17, 2006, Mehta filed a Chapter 7 voluntary bankruptcy petition, in the United States Bankruptcy Court of the Southern District of Georgia, staying the instant action against him automatically, pursuant to the Bankruptcy Code, 11 U.S.C. § 362(a). On January 31, 2007, Mehta was granted a discharge, under 11 U.S.C. § 727. On March 20, 2007, all claims against N. Thakoor were dismissed, by stipulation.

1

On December 21, 2007, your Honor granted DIW's motion for a judgment by default against Amar and awarded attorney fees to DIW, pursuant to 15 U.S.C. § 1117(a). Your Honor referred the matter to the undersigned so that an inquest may be held, to determine the amount of damages and the attorney fees to be awarded to DIW.

By an order, dated January 17, 2008, the Court directed: (a) the plaintiff to submit proposed findings of fact and conclusions of law, as well as an inquest memorandum, accompanied by supporting affidavits and exhibits, setting forth its proof of damages, costs of this action, attorney's fees, and any applicable interest; and (b) the defendant to submit any opposing memorandum, affidavits and exhibits, as well as any alternative findings of fact and conclusions of law. The Court also noted that if a hearing were to be requested by any party, a date for the hearing would be fixed by the Court and provided to the parties, and, if no request for a hearing were to be made, the Court would make its decision solely on the bases of the memoranda and affidavits, without oral argument. On February 19, 2008, DIW filed its proposed findings of fact and conclusions of law, accompanied by affidavits and exhibits. Amar did not make any inquest submissions. No request for a hearing was made by the parties.

**FINDINGS OF FACT**

At an inquest, the complaint's factual allegations must be accepted as true, except as they relate to damages. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). In addition, the plaintiff is entitled to all reasonable inferences from the evidence presented. See id. Based upon the submissions made by the plaintiff, the complaint filed in the instant action, and the Court's review of the entire court file in this action, the following findings of fact are made:

DIW is a corporation operating a guest lodging facility franchise system. On or about

December 30, 1993, DIW entered into a License Agreement ("LA") with Amar for the operation of a 30-room guest lodge facility located at 1126 College Street, Eastman, Georgia. The LA provided that Amar would operate a Days Inn guest lodging facility for a fifteen-year term, during which Amar was permitted to use the Days Inn marks in association with the operation and use of the facility as part of DIW's franchise system. According to the LA, Amar would make periodic payments to DIW for royalties, service assessments, taxes, interests, reservation system user fees, annual conference fees and other fees (collectively "recurring fees"). The LA also required Amar to: (a) prepare and submit monthly reports disclosing, inter alia, the gross room revenue earned by Amar; (b) maintain accurate financial records, including accounts related to the facility's gross room revenue; and (c) allow DIW to examine and copy those financial records.

Under the LA, DIW was entitled to terminate the LA with notice to Amar, for various reasons, including Amar's: (i) failure to pay any amount due DIW under the LA; (ii) failure to remedy any other default of Amar's obligations or warranties, under the LA, within 30 days after receipt of a written notice from DIW specifying one or more such defaults; or (iii) receipt of two or more notices of default under the LA, for the same or similar reason, in any one-year period, regardless of whether the defaults were cured.

Pursuant to the LA, Amar was required, in the event of a termination of the LA, to pay liquidated damages to DIW, in accordance with the formula specified in the LA, stating in pertinent part:

> If this Agreement terminates by action of the Licensee . . . or under Section 19 (a)[, Termination by the Company with Notice,] or (b), Licensee shall pay the Company within 30 days following the date of such event, as Liquidated Damages, because actual damages

> incurred by the Company will be difficult or impossible to ascertain, and not as a penalty, an amount equal to the sum of accrued Recurring Fees during the immediately preceding 24 full calendar months . . . . Notwithstanding the foregoing, in no event shall the amount payable pursuant to this Section be less than the product of $2,000 multiplied by the number of guest rooms in the Facility. Payment of Liquidated Damages shall be in addition to the Company's other rights under this Agreement.

The LA also contained the following provision: "Interest shall accrue at the rate of the lesser of 1.5% per month or the maximum rate permitted by applicable law from the due date of any payment due pursuant to this Agreement which remains unpaid beyond any applicable grace period and shall be payable immediately upon Licensee's receipt of the Company's invoice." The LA provided for its construction in accordance with the laws of New York.

As of December 10, 2002, Amar's account with DIW was past due in the amount of $27,300.90. By a letter, dated December 12, 2002, DIW advised Amar that: (a) it was in breach of the LA for failing to pay recurring fees; (b) it had 30 days to remedy the breach; and (c) if the default was not cured, the LA might be subject to termination. Amar failed to cure its default. By a letter, dated April 18, 2003, DIW advised Amar that Amar was still in default, in the amount of $32, 426.01, and that DIW would terminate the LA on July 18, 2003, unless Amar paid all outstanding recurring fees.

Amar failed to cure its default. By a letter, dated July 18, 2003, DIW terminated the LA, advising Amar to: (1) discontinue immediately the use of all Days Inn trade names, service marks, signs and other forms of advertising on the premises; (2) remove all items bearing the Days Inn marks; (3) change all signs and any listings in directories and similar guides in which the facility was identified as a Days Inn; (4) pay DIW $60,000 liquidated damages for premature termination of the LA; (5) complete de-identification of the facility, according to the instructions

4

specified in the letter, within 14 days from the receipt of the notice; and (6) pay all outstanding recurring fees through the date of termination.

The termination of the LA precluded Amar from any further use of the Days Inn marks in or around the facility and from otherwise presenting or identifying the facility as a Days Inn. From the termination of the LA until at least July 14, 2004, Amar continued to use the Days Inn marks to induce the traveling public to rent guest rooms at the facility. More specifically, on July 14, 2004, a Post Termination Obligations Checklist, completed by DIW, documented that Amar: (a) failed to remove the Days Inn marks from billboards adjacent to the facility; (b) continued to identify the facility as a Days Inn, when answering telephone calls; and (c) failed to remove the Days Inn logo and name from television channel identification plates and ice buckets. As of July 15, 2003, Amar's account with DIW was past due in the amount of $37,557.23.

## CONCLUSIONS OF LAW

A default judgment in an action establishes liability, but is not a concession of damages. See Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). The amount of damages must be established by the plaintiff in a post-default inquest, "unless the amount is liquidated or susceptible of mathematical computation." Id. In conducting an inquest, a court need not hold a hearing "as long as it ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 [2d Cir. 1989]). A court may rely on detailed affidavits or documentary evidence in evaluating the fairness of the sum requested. See Fustok, 873 F.2d at 40.

5

*Recurring Fees*

DIW contends Amar's account with DIW was past due in the amount of $37,557.23, in recurring fees, as noted in an itemized statement that accompanied DIW's July 18, 2003-termination letter to Amar. An account stated is an "agreed upon [] balance of indebtedness," based on an implied or express promise of payment made by the parties to a transaction. Newburger-Morris Co. v. Talcott, 219 N.Y. 505, 512 (1916). DIW provided notice to Amar, by its July 18, 2003 letter terminating the LA, that, as of July 15, 2003, Amar owed to DIW, under the LA, recurring fees in the amount of $37,557.23. Therefore, DIW is entitled to recover $37,557.23 in recurring fees from Amar.

*Liquidates Damages*

DIW seeks to recover liquidated damages in the amount of $60,000, pursuant to the LA. A contractual liquidated damages provision constitutes "an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement." Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 41 N.Y.2d 420, 424, 393 N.Y.S.2d 365, 368 (1977). In order for a contractual liquidated damages provision to be enforceable, the liquidated damages must bear "a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation." Id., at 425, 393 N.Y.S.2d at 369.

No evidence in the record before the Court suggests that the liquidated damages provision in the LA was an unreasonable estimate, at the time the parties executed the LA, of the damages that would be sustained as a result of a breach of their agreement. The liquidated damages provision appears to be unambiguous and permits recovery based on the amount of recurring fees

from the latest two-year period preceding the breach, which shall be no less than the product of $2,000.00 multiplied by 30, the number of guest rooms in the Amar facility. The rational employed to determine the basis of liquidated damages is that "it takes DIW approximately two years to replace a hotel, and its attendant revenue system, in a given geographic area." The parties have agreed that the actual loss would be "difficult or impossible to ascertain," given the variables based on which the recurring fees accrue, and the Court does not perceive the contrary. The Court finds that the amount of liquidated damages, agreed by the parties, is not unreasonably disproportionate to the probable actual loss from the breach of their agreement, the amount of which is difficult to ascertain. Therefore, the plaintiff is entitled to $60,000 in liquidated damages.

*Prejudgment Interest on Contractual Claims*

DIW contends it is entitled to contractual interest of 1.5% per month on both recurring fees and liquidated damages; it seeks: (a) $26,357.04, interest on $37,557.23 recurring fees, accrued from July 18, 2003, through February 2008; and (b) $48,600, interest on $60,000 liquidated damages, accrued from August 17, 2003, thirty days following the termination of the LA, through February 17, 2008.

New York Civil Practice Law and Rules ("CPLR") § 5001(a) mandates that prejudgment interest be recovered "upon a sum awarded because of a breach of performance of a contract." The statutory prejudgment interest rate applies to a claim for liquidated damages. See CPLR §§ 5001 and 5004. CPLR § 5001(b) provides, in pertinent part:

> Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed

7

upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

In New York, the applicable interest rate is nine percent per year. See CPLR § 5004.

The LA provided for interest to accrue at the rate of "the lesser of 1.5% per month or the maximum rate permitted by applicable law." DIW seeks $26,357.04 in interest, accrued on $37,557.23, the recurring fees, from July 18, 2003, through February 2008. DIW fails to explain how it reached the amount it seeks in interest on recurring fees, as neither 1.5% monthly interest nor 9 % annual interest on $37,557.23 results in the amount sought. DIW also seeks $48,600, which represents 1.5% interest accrued on $60,000 liquidated damages, from August 17, 2003, through February 17, 2008.

Notwithstanding DIW's failure to explain how it reached the amount of interest it seeks on the recurring fees, the Court finds that DIW is entitled to nine percent per year statutory interest on the $37,557.23 of recurring fees, because that is "the lesser of 1.5% per month or the maximum rate permitted by applicable law." Although Amar failed to pay recurring fees at various times, DIW contends the interest on the total principal amount due to it should accrue from July 18, 2003, the date of the LA's termination. The Court finds July 18, 2003, to be a reasonable date from which to compute the interest. Accordingly, the prejudgment interest of nine percent per year on $37,557.23 recurring fees shall be computed from July 18, 2003.

The Court also finds that DIW is entitled to nine percent per year statutory interest on the $60,000 of liquidated damages, because that is "the lesser of 1.5% per month or the maximum rate permitted by applicable law." The prejudgment interest of nine percent per year on $60,000 liquidated damages shall be computed from August 17, 2003.

*Damages under the Lanham Act*

DIW seeks damages for trademark infringement and false advertising, under the Lanham Act, from July 18, 2003, through at least July 14, 2004, totaling $37,977.87. DIW contends that, absent discovery, it cannot ascertain the amount of Amar's actual revenue during the period of infringement, but it can estimate the amount of damages based on "the average Recurring Fees incurred by Defendant Amar, on its reported gross room revenue." DIW estimates that, "for the last fifteen months that Amar reported its revenues for the Facility to DIW, Amar paid an average Recurring Fees of $1,054.94 per month." Based on that amount, DIW estimates, its damages during the infringement period amount to $12,659.29. However, DIW seeks, "in light of Defendant Amar's lengthy and willful violation, and pursuant to the discretion afforded by 15 U.S.C. § 1117(a), . . . treble damages" in the amount of $37,977.87.

The Lanham Act provides, in pertinent part, that when a trademark infringement is established, the plaintiff is entitled to: "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Assessing the profits and damages resulting from the trademark infringement is at a court's discretion and subject to the principles of equity. See 15 U.S.C. § 1117(a). The burden is on the plaintiff to prove the defendant's sales and, after that, on the defendant to prove all elements of cost or deduction claimed. See 15 U.S.C. § 1117(a). "In assessing damages, the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a).

Absent discovery, DIW lacks evidence to demonstrate Amar's profits during the infringement period and the actual damages DIW sustained due to the infringement. The Court

9

finds that using the average amount of monthly recurring fees prior to the infringement period, the way DIW did here, appears to be a reasonable way to assess Amar's profit and the damages sustained by DIW during the infringement period. Since Amar failed to oppose the instant request for damages, and to participate in the action otherwise, the Court is unable to assess, whether any deduction from the amount sought by DIW is warranted. In the circumstance of the instant case and in view of equity principles, $37,977.87, the amount sought by DIW against Amar for willful trademark infringement and false advertising, appear reasonable and not greater than three times the estimated damages. Therefore, DIW is entitled to recover $37,977.87, under the Lanham Act.

*Costs*

The Lanham Act entitles the prevailing party, whose rights have been infringed, to recover the costs of the action. See 15 U.S.C. 1117(a). "[The] list of [] recoverable costs is obviously the list set out in 28 U.S.C. § 1920, the general statute governing the taxation of costs in federal court." Arlington Central School Dist. Bd. of Educ. v. Murphy, ___ U.S. ___,126 S. Ct. 2455, 2460 (2006); see Rangolan v. County of Nassau, 370 F.3d 239, 250 (2d Cir. 2004). The list of taxable costs includes: (1) fees of the clerk and marshal; (2) fees of a court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. See 28 U.S.C. § 1920. A district court does not have discretion, under Fed. R. Civ. P. 54(d), to tax as costs

expenses incurred beyond those specified as taxable by Congress in 28 U.S.C. § 1920. See Whitfield v. Scully, 241 F.3d 264, 269 (2d Cir. 2001); Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42, 107 S. Ct. 2494, 2497 (1987). Additionally, Local Civil Rule 54.1(c)(7) of this court provides that "[a]ttorney fees and disbursements and other related fees and paralegal expenses are not taxable except by order of the court."

DIW seeks to recover $2,371.71 in costs, incurred in connection with the instant litigation against Amar. DIW submitted a copy of its "Disbursement Detail Report" which includes as costs, inter alia, $543.13 for shipping and $472.00 for effecting service. Other costs sought are for the following categories: duplicating; telephone; telecopy; filing and miscellaneous fees; legal research; legal research-Westlaw; and subpoena fees.

The only item from DIW's list that appears to qualify as a cost, under "copies of papers necessarily obtained for use in the case," 28 U.S.C. § 1920(4), is "duplicating." DIW seeks: (a) $61.00 for "Complaint. 610 pages;" (b) $8.10 for "Complaint For Service. 81 pages;" (c) $143.20 for the total of 1432 pages of the first amended complaint and the summons; (d) $97.60 for "Order to Show Cause and supporting documents. 976 pages;" and (e) $200 for "Preparation of documents for submission to court." However, most of the duplicating costs DIW claims are not justified. For example, DIW failed to justify: (i) why it needed to duplicate 1432 pages of the first amended complaint, which consists of 47 pages, including exhibits; and (ii) that 1432 pages were necessarily obtained for use in the case. In addition, the plaintiff failed to explain what documents were copied in "[p]reparation [] for submission to [the] court," and justify that those documents were necessarily obtained for use in the case.

Accordingly, the Court finds that the following duplicating costs are warranted:

(i) $61.00, pertaining to the complaint; (ii) $82.50, pertaining to the first amended complaint; and (iii) $97.60, pertaining to the order to show cause. All other items, listed by DIW on its "Disbursement Detail Report," are not costs within the meaning of 28 U.S.C. § 1920. See United States v. Merritt Meridian Construction Corp., 95 F.3d 153, 172-73 (2d Cir. 1996) (28 U.S.C. § 1920 does not authorize the shifting of private process fees and computer research is compensable under an application for attorney's fees, but not as a separately taxable cost); Kuzma v. I.R.S., 821 F.2d 930, 933 (2d Cir. 1987). Therefore, DIW is entitled to recover $241 in costs.

*Reasonable Attorney's Fees*

DIW seeks attorney fees in the amount of $20,057.54. DIW is represented by Gibbons P.C. ("Gibbons"). DIW contends its "counsel have devoted over ninety-five (95) hours to this case, earning $20,057.54 in fees."

When fixing an appropriate amount to be awarded for attorney fees, the "presumptively reasonable fee" method is employed. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, ___ F.3d ___, No. 06-0086-CV, 2008 WL 961313, at *1 (2d Cir. Apr. 10, 2008). A court must consider "*all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees," in order to determine what is a presumptively reasonable fee. Id. at *7 (italics in the original). These variables include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or

the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Id. at *10 n.3 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 [5th Cir. 1974]). In the final analysis, a reasonable hourly rate is market-based, or in other words, "the rate a paying client would be willing to pay." Id. at *10.

A party seeking a fee award must support the request with contemporaneous time records detailing, "for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983). Fee applications without such supporting data "should normally be disallowed." Id.

In support of its request for attorney's fees, DIW submitted an affidavit by its law firm's associate, Robert C. Brady ("Brady"), providing "a brief description of the professional background of each of the individuals who have performed work on this matter and Standard Rates charged for their services." The "brief description of the professional background," with respect to the attorneys involved, consists of information about: (a) law schools from which the attorneys graduated; (b) courts to which they have been admitted; and (c) where some of the attorneys involved served as law clerks. DIW seeks attorney's fees for the work performed by the following persons: (1) Brady, associate; (2) Patrick C. Dunican, Jr., Gibbons' Chairman and Managing Director; (3) Lacy M. Corcoran, Gibbons' former associate; (4) George B. Forbes, associate; (5) Timothy J. Duva, associate; (6) Nancy Ward, paralegal; (7) Nancy Alvarez, Gibbons' former paralegal; and (8) Nancy Moore, the firm's reference librarian. According to Brady's affidavit, the law firm billed DIW at its standard rates.

13

The experience and ability of each attorney who rendered legal services to the plaintiff, during the instant litigation, are factors that the Court must consider in determining the reasonableness of the attorney fees the plaintiff incurred. Failing to provide information to the Court about the experience level and ability of DIW's attorneys presents an obstacle to understanding whether the rates billed, for the various hours expended by the attorneys involved, were reasonable and appropriate.

In analyzing an application for attorney fees, a court must consider the reasonable number of hours expended by counsel to a party during the course of the litigation. A court may reduce the number of hours billed by counsel to a party if the billing records submitted to the court do not describe, with sufficient clarity, the nature of the work performed such that the court can assess the reasonableness of that work in the context of the overall litigation and, concomitantly, determine whether the amount billed for the work was reasonable. See Williamsburg Fair Hous. Comm. v. New York City Hous. Auth., No. 76 Civ. 2125, 2005 WL 736146, at *9 (S.D.N.Y. Mar. 31, 2005).

One managing director, four associates, two paralegals and one librarian performed work in connection with the instant case. This lawsuit is an exemplar of a simple action in which a defendant, having been served with process, failed to plead or otherwise defend within the time required. The time and labor required for seeking a judgment by default, pursuant to Fed. R. Civ. P. 55 and based on the defendant's failure to plead or otherwise defend, as well as the level of skill required to perform the legal tasks in connection with it, are, under the circumstances of the instant action, de minimis. The Court finds it is astounding and incredible that 95.1 hours were expended by five attorneys in an action as straightforward as this. Furthermore, the Court finds it

extraordinary that the law firm billed DIW more for drafting the "proof of service form and letter to" the Court than for drafting and finalizing the first amended complaint, and that drafting the "proof of service form and letter" fee was in excess of 50% of the fee billed for drafting the complaint. The law firm also billed the plaintiff $779 for "coordinat[ing]" and "re-filing" the motion for judgment by default, after the motion previously filed was denied by your Honor on November 2, 2007, "without prejudice, because Plaintiff did not file the original Clerk's Certificate of Default," pursuant to Local Civil Rule 55.2.

The Court is unable to conclude that any client would be willing to pay to correct its law firm's failure to follow procedural rules or that any hourly rate charged for such work is reasonable. Furthermore, the Court cannot conclude that the hours claimed or the skills of all the attorneys involved were reasonably necessary to resolve a case, such as this, through a judgment by default.

Additionally, the law firm's billing entries contain a significant number of vague entries, such as: "Attention to recent file materials;" "Attention to service of amended complaint;" "Attention to organization of documents and preparation into general document repository;" These entries, qualified with the term "attention," do not aid the Court in understanding the nature of the work performed and whether the work involved research, review, revision, or a combination of any of those or other tasks. The law firm's billing data demonstrate that a substantial amount of work performed, especially in connection with seeking a judgment by default, was redundant and unnecessarily duplicative.

No reasonable paying client would be willing to pay $20,057.54 in attorney fees, for a simple case, such as this, involving a settled area of law and no complex issues, in which the

defendant failed to plead or otherwise defend. All the above deficiencies warrant the Court in determining that the expenditure of time claimed and the fees charged were unreasonable. Therefore, the Court finds that a 75% reduction in the $20,057.54, requested by the plaintiff in attorney fees, is appropriate. See Luciano v. The Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997).

*Post-Judgment Interest*

28 U.S.C. § 1961 informs that "interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [] the date of the judgment." 28 U.S.C. § 1961(a). Therefore, the plaintiff is entitled to post-judgment interest, at the rate prescribed by the above-noted statute, commencing from the date the default judgment is entered.

**RECOMMENDATION**

For the reasons set forth above, the Court recommends that the following be awarded to the plaintiff: (1) $37,557.23 in recurring fees; (2) prejudgment interest, at nine percent per year, on the $37,557.23 of recurring fees, computed from July 18, 2003; (3) $60,000 in liquidated damages; (4) prejudgment interest, at nine percent per year, on $60,000 of liquidated damages, computed from August 17, 2003; (5) $241 in costs; (6) $5,014.38 in attorney fees; and (7) post-judgment interest, pursuant to 28 U.S.C. § 1961(a).

\* \* \*

The plaintiff shall serve the defendant with a copy of this Report and Recommendation and shall submit proof of service to the court.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of the Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Kimba M. Wood, United States District Judge, 500 Pearl Street, Room 1610, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 530, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Wood. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Candair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
May 2, 2008

Respectfully submitted,

*/Kevin Nathaniel Fox/*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Mailed copy to:
Patrick C. Duncan, Jr., Esq.